UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:21-CR-00266-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **RYAN SPENCER GEORGE (01)** | **RETIRED MAG JDG JRS KAY** |

**MEMORANDUM ORDER**

Before the Court is a "Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and to Appoint Counsel to Assist with Same" (Doc. 35) filed by Defendant, Ryan Spencer George. George moves to reduce his 108-month sentence to time served or to any sentence less than 108. The Government opposes the motion.

**BACKGROUND**

On March 30, 2020, deputies with the Calcasieu Parish Sheriff's Office in Lake Charles, Louisiana were dispatched to the Moss Memorial Hospital in reference to a deceased male that was dropped off at the door.[1] According to witnesses, an individual, later identified as Defendant, Ryan Spencer George, was seen pulling up to the rear entrance of the hospital, where he forcefully removed a body from the passenger side of his vehicle, and dumped it on the ground. He then returned to the vehicle and quickly fled the scene. *Id*.

---

[1] PSR, at ¶ 7.

An autopsy later revealed that the victim was an 18-year-old who had died as a result of opiate and methamphetamine intoxication. *Id*. The corner also found that the victim had been deceased for a length of time prior to being dumped by George. *Id*.

On March 31, 2020, after searching for George for hours, officers later located the vehicle and placed George under arrest.[2] While searching George's person incident to the arrest, Detectives located multiple plastic baggies containing at least twenty-five grams of methamphetamine and a digital scale. *Id*. The vehicle was later searched, and officers located a loaded 9mm SCCY pistol that was reported stolen, four small clear plastic bags each containing heroin, five small tin foil tablets each containing heroin, and a used syringe.[3] On that same date, officers conducted a post Miranda interview of George who admitted to doing drugs with the victim in the driveway of his mother's residence and later dropping off the victim at the hospital.[4] George also admitted that he did not call 911 for assistance for fear of being caught with methamphetamine. *Id*.

Prior to the incident, in 2015, George had been convicted in Lake Charles, Louisiana of Distribution of Methamphetamine.[5] In 2018, the defendant was convicted of Possession of CDS II (Methamphetamine) and Possession of a Weapon by a Convicted Felon.[6] According to records from that case, officers were called by George's mother after she witnessed him with a firearm. *Id*. Officers later located George inside of his mother's

---

[2] PSR, at ¶ 9.
[3] PSR, at ¶¶ 11- 13.
[4] PSR, at ¶ 14.
[5] PSR, at ¶ 50.
[6] PSR, at ¶ 54.

residence sleeping on the floor with multiple narcotics in his possession. *Id*. Of significance, George was on parole when he was arrested for the underlying matter. *Id*.

On October 20, 2021, a federal grand jury returned a five count Indictment against George, charging him with two counts count of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1); one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1); one count of possession of a stolen firearm in violation of 18 U.S.C. § 922(j); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).[7] On May 26, 2022, George pled guilty to counts 1 and 3 of the Indictment.[8] The PSR calculated his sentencing guideline range as 92 to 115 months imprisonment.[9]

On September 1, 2022, George was sentenced to 108 months on each count, to run concurrently, followed by 3 years of supervised release.[10] The Bureau of Prisons calculates his current release date as September 26, 2029. On October 23, 2024, George filed a motion for reduction of sentence under 18 U.S.C. § 3582.[11] In the motion, George asserts that he needs to assist his mother as her caretaker due to various medical issues. *Id*. He also argues that the factors under 18 U.S.C. § 3553(a) justify his release. *Id.*

---

[7] Doc. 1.
[8] Doc. 22.
[9] PSR, at ¶ 94.
[10] Doc. 33.
[11] Doc. 35.

## LAW AND ANALYSIS

George seeks to be released early due to his claims that he needs to take care of his ailing mother. The Government argues that he has not demonstrated that an extraordinary and compelling reason merits relief or that he no longer a danger to the community.

A judgment, including a sentence of imprisonment, "may not be modified by a district court except in limited circumstances." *Dillon v. United States,* 560 U.S. 817, 825 (2010). Under 18 U.S.C. 3582(c), a court generally may not modify a term of imprisonment once it has been imposed, except in three circumstances; (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A); (2) to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Section 3852(c)(1)(A) permits a court to reduce a prisoner's sentence "if he finds that" (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

Prior to 2018, only the Director of the BOP could file these kinds of compassionate release motions. In 2018, Congress passed, and President Trump signed the First Step Act, which among other actions, amended the compassionate release process. Under the First Step Act, § 3582(c)(1)(A) now allows prisoners to directly petition courts for compassionate release.

Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C, § 3582(c)(1)(A). Here,

the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(1) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or the community, as provided in 18 US.C. § 3142(g); and (iii) "the reduction is consistent with this policy statement."[12] U.S.S.G. § 1B1.13.

The guideline policy statement, as amended effective November 1, 2023, is binding. 28 U.S.C. § 994(t). The application note sets forth conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).  See generally *United States v. Handlon*, 97 F.4th 829, 832-33 (11th Cir. 2024) (the court may not grant relief based on a factor not addressed in the guideline; therefore, the district court did not err in a motion addressed before Nov. 1, 2023, in denying relief based on a claim of a parent's disability); *United States v. Chavez*, 2024 WL 24065, at *3 (S.D. Cal. Jan. 2, 2024); *United States v. Diamond*, 2023 WL 8724142, at *2 (S.D. Iowa Dec. 19, 2023) ("under § 3582(c)(1)(A)'s plain language, any reduction in sentence under this section must be 'consistent' with the Commission's policy statement in USSG § 1B1.13."); *United States v. Eggleston*, 2023 WL 8716876, at *4 (D. Md. Dec. 18, 2023); *United States v. Gonzalez*, 2024 WL 253664, at *4 (W.D.N.C. Jan. 23, 2024); *United States v. Eccles*, 2024 WL 83493, at *3 (W.D. Wash. Jan. 8, 2024).  The Government contends that courts regularly deny compassionate release

---

[12] The policy statement refers only to motions filed by the BOP director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). See first Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239. In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 35829c)(2)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

when a defendant's claim of extraordinary and compelling circumstances is not contained within and thus consistent with the policy statement itself.

The BOP has issued a regulation to define its own consideration of compassionate release requests. See BOP Program Statement 5050.50.[13] This Program Statement was amended effective January 17, 2019, following the First Step Act's passage. It sets forth in detail the BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances. The policy statement is binding under the express terms of § 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States,* 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory. See *Dillon v. United States*, 560 U.S. 817, 830 (2010) (making clear that the statutory requirement in § 3582 that a court heed the restrictions stated by the Sentencing Commission is binding).

Here, the Court agrees with the Government that Defendant's mother's medical conditions do not rise to the level of extraordinary and compelling reasons warranting relief. The Court further notes that George's mother is or was receiving care at an assisted living facility.[14]

Additionally, George has not convinced this Court that he is no longer a danger to the safety of any other person or to the community as provided in 19 U.S.C. § 3142(g). See *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming the denial of compassionate release where the district court properly relied on the fact that an inmate

---

[13] Available at https://www.bop.gov/policy/progstat/5050_50EN.pdf .
[14] Doc. 35.

suffering from terminal cancer had a violent criminal history, had committed a violent offense, and had served less than half the sentence imposed).

The Government reminds the Court that at the time of George's sentencing he had been arrested twenty-three times, had five prior felony convictions, and multiple violations of supervision.[15]

The Court finds that George has failed to demonstrate an extraordinary and compelling reason that would merit relief, nor has he persuaded this Court that he is not a danger to a person or the community. Accordingly,

**IT IS ORDERED** that George's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and to Appoint Counsel to Assist with Same (Doc. 35) is **DENIED** in its entirety.

**THUS DONE AND SIGNED** in Chambers on this 19th day of December, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[15] PSR, at ¶¶ 45-71.